Donahue and Newmán, JJ.,
dissenting. We dissent from the judgment announced by the majority of this court for the reasons:
1. That after this court had announced its judgment in the case of Village of Oakwood v. Stoecklein, 81 Ohio St., 332, the general assembly of Ohio promptly amended Section 3812, General Code, and changed “foot frontage” to “foot front,” so that in this particular the section reads the same as it read at the time the cases of Haviland v. City of Columbus et al., 50 Ohio St., 471, and City of Toledo v. Sheill, 53 Ohio St., 447, were decided. Personally, we do not think that the language of the amendment of 1902, “foot frontage,” differs from the language of the original section. But .that inquiry is no longer of any importance. The court held that the amendment of 1902 to this section required a change in its construction, and within ninety days thereafter the lawmaking power of the state again amended the section by rewriting into it the exact language it contained when the Haviland and Sheill cases were decided, eliminating therefrom the language which was held by this court to justify the construction given to the law in the case of Village of Oakwood v. *257 Stoecklein, supra. In amending this law the legislature of the state could have had no purpose other than to restore the doctrine announced in the Haviland and Sheill cases. This is so clear that argument in support of it is needless. It follows, therefore, that if the intention of the legislature is to be any guide to the interpretation of a statute this intention so clearly appears that there is no chance to be mistaken upon the question, and therefore the judgment, of the circuit court should be affirmed.
2. Aside from the clear intent and purpose of this amendment, the language used in Section 3812 is not subject to any other construction than the construction given it by the court in the Haviland and Sheill cases, supra. That section provides three ways by which assessments may be levied: First, by a percentage of the tax value of the property assessed; second, in proportion to the benefits which may result from the improvement, and, third, by the foot front of the property bounding and abutting upon the improvement.
“Foot front” is a very common term applied to city lots. There is nothing ambiguous in the language, nothing calling for construction when used in the statute. It means just what mankind in general understands it to mean, just what this court declared it to mean in the Haviland and Sheill cases. The value of city lots is largely determined by the front foot. It is true, the depth of a lot has something to do with its value, but the depth is by no means as important to its value as the frontage, and therefore that kind of property is usually bought and sold at a price fixed and *258 determined by the front foot. If a contract for the purchase of a city lot were before this court, the terms of which provided that the price to be paid therefor would be so many dollars per front foot, it is hardly possible that lawyers would dispute or that the court would have any difficulty in determining the meaning of this language or the intent and understanding of the parties to the contract. The fact that this language is found in the statute does not make its meaning doubtful, nor authorize the construction that it means the depth or side of a lot instead of its frontage. If the. lawmaking power of this state intended to authorize assessment upon the depth of a lot it would have used language other than the phrase “foot front.”
In the majority opinion of this court there is some discussion as to the equity of permitting a portion of the depth of a lot to escape assessment for a side street. But this is a matter of statute, and with the equities of the case this court has nothing to do. That is a question for the legislature to determine. But, even if that question were involved, upon what theory should the owner of a corner lot pay the total cost of improving the side street as well as the street in front of his property? It must be remembered that the public streets of a city are primarily for the uses and purposes of the public. The fact that they also furnish ingress and egress to private property is the theory upon which private property is made to pay for street improvements. But it must be conceded that the side street is not as'valuable to property as the front street. And yet the rule *259 here adopted compels the owner of a corner lot to pay two or three times as large an assessment for the improvement of a side street as he would be required to pay for the improvement of the street fronting his property. Clearly such a rule overlooks the question of benefits and may in some instances amount practically to a confiscation of private property. It is undoubtedly just and right that property benefited by street improvements should pay its share of the cost in proportion to benefits. But it by no means follows that it would be just or right to compel the owner of a corner lot to pay all the cost of the improvement of both front and side streets, and clearly it would not be right to compel him to pay twice or three times as much for the improvement of the side street as he is required to pay for the improvement of the front street. The lots fronting on this side street are benefited by the improvement thereof largely in excess of a corner lot facing on another street, and yet these lots fronting on the side street would be assessed but a small sum in proportion to the assessment upon the depth of the corner lot for the improvement of this street which is their front street but the side street of the corner lot. The public generally would pay nothing beyond the cost of the street intersection, although the improvement of streets is primarily for the benefit of the public. Not only this, but the inside lots in the same block with the corner lot and fronting upon the same street as the corner lot also are materially benefited by the improvement of the side street, for by that street the owner can reach the alley to the rear of his property. Yet by this *260 construction he is not compelled to pay anything whatever for the side street, either by special assessments or by general taxation for such purposes, but the whole burden is placed upon the corner lot, notwithstanding it is apparent that it receives no benefit therefrom commensurate with the burden imposed.